UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 18-31057 (AMN) |
|     JEHUJAH J. MCNEILLY, | : | Chapter 13 |
|     *Debtor* | : | |
| | : | |
| BRITTANY T. BENSON | : | |
|     *Claimant* | : | |
| v. | : | |
| JEHUJAH J. MCNEILLY | : | |
|     *Debtor/Objector* | : | RE: ECF No. 40, |
| | : | Proof of Claim 2-1 |

**MEMORANDUM OF DECISION AND ORDER
AFTER EVIDENTIARY HEARING DISALLOWING PROOF OF CLAIM 2-1**

APPEARANCES

*Counsel for the Claimant:*

Peter Lachmann
250 West Main Street
Branford, CT 06405

*Counsel for the Debtor/Objector:*

William A. Butler, III
44 Church Street
West Haven, CT 06516

Before the Court is debtor Jehujah J. McNeilly's ("Debtor" or "Ms. McNeilly") Amended Objection ("Objection") to a proof of claim filed by an alleged creditor, Brittany T. Benson ("Ms. Benson"). ECF No. 40; Proof of Claim No. 2-1 ("POC 2"). Because I conclude after an evidentiary hearing held on June 10, 2019 ("June 10 Hearing") that Ms. Benson failed to meet her burden of proof to establish an enforceable claim against Ms. McNeilly, the Objection is sustained and POC 2 is disallowed.

I.  JURISDICTION AND VENUE

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b), and the District Court's Order of referral of bankruptcy matters, dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this District pursuant to 28 U.S.C. § 1409.

II.  PROCEDURAL BACKGROUND AND FACTS

*The 2010-2013 State Court Proceedings Against Ms. McNeilly's Son*

The present dispute is the latest of Ms. Benson's collection efforts seeking to recover money owed to her by the Debtor's son, Steven William McNeilly, a/k/a William McNeilly ("Mr. McNeilly"), from assets of Ms. McNeilly. In 2010, Ms. Benson commenced an action in the Connecticut Superior Court against Mr. McNeilly and his company Mackeyboy Auto, and, in 2013, she obtained a judgment in accordance with an arbitration decision ("State Court Judgment"). POC 2; ECF No. 107; *see*, Connecticut Superior Court Case No. NNH-CV11-5033628-S. The docket of the Superior Court case reflects collection activity by Ms. Benson continued for years after the State Court Judgment entered, and that in Fall 2017, the Superior Court denied Ms. Benson's motion to examine Ms. McNeilly because, "Jean [sic] McNeilly is not a judgment debtor."[1] Case No. NNH-CV11-5033628-S, Doc. ID 190.10.

*Ms. McNeilly's 2015 Chapter 13 Case*

On January 15, 2015, the Debtor filed her first Chapter 13 bankruptcy case ("2015 Case"). Case No. 15-30064, ECF No. 1.[2] Mr. McNeilly appeared during hearings held in

---

[1]    In the Objection, Ms. McNeilly noted that Ms. Benson filed the motion against the Debtor in the Superior Court without filing any request for relief from the automatic stay imposed by the 2015 Case. ECF No. 40, p. 5. No motion to enforce the stay is pending so the issue is not addressed here.
[2]    Citations to the docket in Case No. 18-31057 are noted by "ECF No." Citations to the docket in

2

the 2015 Case alongside Ms. McNeilly. Ms. Benson commenced an adversary proceeding in the 2015 Case alleging the Debtor held property of Mr. McNeilly and his company (MackeyBoy Auto LLC) in trust for Ms. Benson as a result of a constructive fraudulent transfer. Adversary Proceeding Case No. 17-03022, ECF No. 1.

The 2015 Case was ultimately dismissed in February 2018, and as a result, Ms. Benson's adversary proceeding was also closed. Case No. 15-30064, ECF No. 145; Adversary Proceeding Case No. 17-03022, ECF No. 16. During the 2015 Case, Ms. McNeilly made significant Chapter 13 plan payments to the Chapter 13 Trustee totaling approximately $75,000.00,[3] although no plan was confirmed. After payment of certain post-petition expenses, the Chapter 13 Trustee refunded approximately $45,000.00 to Ms. McNeilly. Case No. 15-30064, ECF No.168, p. 1.

*Ms. McNeilly's 2018 Chapter 13 Case*

Ms. McNeilly commenced this second Chapter 13 case by filing a voluntary petition on June 25, 2018 ("Petition Date"). ECF No. 1. On July 25, 2018, Ms. Benson filed POC 2 in the amount of $13,263.38. ECF No. 40, p. 7. The record reflects that Ms. McNeilly filed a Chapter 13 plan that if confirmed will pay her secured creditor in full based on a negotiated agreement, and has been making monthly plan payments to the Chapter 13 Trustee. The Debtor objected to POC 2 asserting that Ms. Benson holds no enforceable claim against her, her property, or this bankruptcy estate. ECF No. 40; *see* 11 U.S.C.[4] §

---

Case No. 15-30064 are noted by "Case No. 15-30064, ECF No." Citations to the docket in Adversary Proceeding Case No. 17-03022 are noted by "Adversary Proceeding Case No. 17-03022, ECF No."

[3]    As part of the dismissal process, Ms. McNeilly settled a dispute with the mortgage holder for her real property and the Chapter 13 Trustee disbursed a portion of the plan payments to the mortgage holder in consideration of advances made during the case for post-petition real property taxes.

[4]    Unless otherwise noted, all statutory citations refer to the Bankruptcy Code, Title 11, United States Code.

502; Fed.R.Bankr.P. 3007. An evidentiary hearing on the Objection was held on June 10, during which a single witness – the Debtor, Ms. McNeilly – testified.

*Findings of Fact*

While the State Court Judgment does not name the Debtor, Ms. Benson is pressing her claim through POC 2 because, subsequent to the State Court Judgment, Mr. McNeilly made rental payments to his mother for his use of a room at her property located at 10 Lester Street in West Haven Connecticut ("Property"). According to Ms. McNeilly's testimony, the rental payments were in the amount of $454.00 per month, over a period of three years, commencing in or around January 2015. While Ms. Benson's counsel argued[5] that the monthly rental payments by Mr. McNeilly to the Debtor were made to avoid payment of Ms. Benson's State Court Judgment, no evidence was presented tying the monthly rental payments to any other financial information regarding Mr. McNeilly. For example, the exact number of payments is unknown, Mr. McNeilly did not pay every month during this period so there is no total amount of the payments, no record of a single payment was presented, and no other fact regarding Mr. McNeilly's assets, liabilities, income or expenses was offered.

III.    BURDEN OF PROOF AND APPLICABLE LAW

*Burden of Proof*

A correctly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *In re AMR Corp.*, No. 11-15463, 2018 WL 6523965 (Bankr.

---

[5] Ms. Benson did not attend the June 10 Hearing.

S.D.N.Y. 2018); *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). By producing, "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to, "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *In re Petroleum Kings, LLC,* No. 17-22154, 2018 WL 4907613 (Bankr. S.D.N.Y. 2018); *In re Motors Liquidation Co.*, No. 12 CIV. 6074 RJS, 2013 WL 5549643 (S.D.N.Y. 2013); *In re Residential Capital, LLC*, 519 B.R. 890, 900 (Bankr. S.D.N.Y. 2014).

As to Ms. Benson's state law theories, discussed in more detail below, Ms. Benson bears the burden to establish she has an enforceable claim against Ms. McNeilly. To meet her burden she claimed that Ms. McNeilly is liable under Conn. Gen. Stat. § 52-552e as a transferee of Mr. McNeilly's alleged fraudulent transfers in the form of rental payments.

*Applicable Bankruptcy Law*

A "claim" is defined as, "[a] right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A); 2 *Collier on Bankruptcy* ¶ 101.05. The Bankruptcy Code defines the term "claim" much more broadly in Section 101(5) than under previous law. In the former Bankruptcy Act, "claim" was not defined. 2 *Collier on Bankruptcy* ¶ 101.05. The term was only used with the concept of provability to limit the kinds of debts that were payable in a bankruptcy case. 2 *Collier on Bankruptcy* ¶ 101.05.

By fashioning a single definition of "claim" in the current Bankruptcy Code, Congress intended to adopt the broadest available definition of that term. *Midland*

*Funding, LLC v. Johnson,* 137 S. Ct. 1407, 1409 (2017); *Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991); 2 *Collier on Bankruptcy* ¶ 101.05. The Supreme Court has repeatedly reiterated this principle and has declined all invitations to exclude rights to payment from the definition of claim.  2 *Collier on Bankruptcy* ¶ 101.05.  Indeed, the Court has held that even a right to payment that is not enforceable because the statute of limitations has expired is a claim, at least if the underlying non-bankruptcy law does not extinguish the right to payment.  *Midland Funding,* 137 S. Ct. at 1409; 2 *Collier on Bankruptcy* ¶ 101.05.

Section § 502(b)(1) of the Bankruptcy Code provides that a claim may be disallowed if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable non-bankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006); *In re Residential Capital, LLC*, 519 B.R. 890, 900 (Bankr. S.D.N.Y. 2014); 2 *Collier on Bankruptcy* ¶ 101.05.

*Applicable State Law*

Ms. Benson argued her claim should be allowed under Conn. Gen. Stat § 52-552e.[6]  "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor." Conn. Gen. Stat § 52-552e(a).  Here, of course, the debtor for purposes of Conn. Gen. Stat. 52-552e is Mr. McNeilly.  To

---

[6]   Conn. Gen. Stat.  § 52-552e was the only basis for POC 2 pursued by Ms. Benson.  All other theories raised in response to the Objection or otherwise were waived by Ms. Benson during the June 10 Hearing.

determine actual intent under Conn. Gen. Stat. § 52-552e(a)(1) courts look to certain badges of fraud.  Existence of some or all of the badges of fraud is merely circumstantial evidence and does not constitute conclusive proof of actual intent to defraud, for fraudulent transfer avoidance purposes; however, existence of several badges of fraud can be clear and convincing evidence of a judgment debtor's actual fraudulent intent.  4 L. King, Collier on Bankruptcy ¶ 548.04[2].

The badges of fraud commonly applied to consider claims pursuant to Conn. Gen. Stat. 52-552e(b) include:

(1) The transfer or obligation was to an insider,
(2) The debtor retained possession or control of the property transferred after the transfer,
(3) The transfer or obligation was disclosed or concealed
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit,
(5) The transfer was of substantially all the debtor's assets,
(6) The debtor absconded,
(7) The debtor removed or concealed assets,
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred,
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, and
(10)    The transfer occurred shortly before or shortly after a substantial debt was incurred.

Because establishing a transferor's actual intent is ordinarily not susceptible to direct proof, courts look to the totality of the circumstances and certain "badges of fraud." *In re Manhattan Inv. Fund, Ltd.*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002).  The determination of fraudulent intent is an issue of fact which often must be inferred from surrounding circumstances, ordinarily not proven by direct evidence, but rather, by inference from other facts proven -- the indicia or badges of fraud.  *Shawmut Bank v.*

*Brooks Dev. Corp.,* 46 Conn. App. 399, 406 (1997). "Badges of fraud are circumstances that ... commonly accompany fraudulent transfers [and] their presence [leads to] an inference of intent to defraud." *Manhattan Inv. Fund,* at 505.

IV.    DISCUSSION

Based upon the evidence presented during the June 10 Hearing and in the record before me, I conclude that POC 2 should be disallowed. Ms. Benson failed to carry her burden to show that the rental payments made from Mr. McNeilly to Debtor were fraudulent transfers by Mr. McNeilly under Conn. Gen. Stat § 52-552e that would give rise to an enforceable claim against his mother or her bankruptcy estate.

To be successful, Ms. Benson needed to establish that her claim arose before the transfers were made, that Mr. McNeilly made the transfers with actual intent to hinder, delay or defraud her and that Ms. Benson had an enforceable claim against Ms. McNeilly for the transferred property (here, the rental payments from son to mother). Although she met the first requirement because the State Court Judgment entered before the rental payments began, Ms. Benson did not prove, by a preponderance of the evidence that the rental payments were made with the intent to deprive Ms. Benson of the money owed on the State Court Judgment.

Ms. Benson did not attend the June 10 Hearing, and the only witness was Ms. McNeilly. No evidence was presented substantiating Mr. McNeilly's subjective intention in paying rent to his mother for a room at the Property. Accordingly, the Court must evaluate the evidence to determine whether, taken as a whole, there are sufficient "badges of fraud" to conclude that the transfers (or periodic rental payments) were fraudulent as contemplated by Conn. Gen. Stat. § 52-552e.

It is clear Ms. Benson established two of the traditional badges of fraud: (1) the transfers were to an insider; and, (2) the transfers were made after the judgment debtor (Mr. McNeilly) had been sued or threatened with suit. These two badges were admitted by Ms. McNeilly. I note the transfers were years after entry of the State Court Judgment.

As to the badges of fraud regarding whether Mr. McNeilly retained possession or control of the property transferred after a transfer, or removed or concealed assets, little or no evidence of the details of any single property transfer, removal, or concealment was presented. To the extent Ms. Benson argued that Mr. McNeilly's payments of his own money to his mother are suspect, there was no evidence substantiating the date, amount, total or manner of such payments. At most, Ms. McNeilly testified that her son paid her rent of $454.00 per month in cash, for many months over a three year period, but not every month. No record of a single payment or of the total paid was offered into evidence. No evidence supporting post-transfer control was offered. Accordingly, there is no evidence supporting the assertion Mr. McNeilly retained control over his own money after he paid the rent to his mother, or that he removed his money or concealed his assets from Ms. Benson or any other creditor by paying rent to his mother.

To the extent Ms. Benson argued that Mr. McNeilly collected money from his mother's other tenants, and retained control of those rental payments, the argument is irrelevant. The question is not what Mr. McNeilly did with the tenants' money, but rather what he did with his own money. In any event, no evidence of Mr. McNeilly's control of other tenants' money after delivery of the money to his mother was offered. Based on the evidence presented, I conclude Ms. Benson failed to establish that Mr. McNeilly retained control of his own money after paying it to his mother.

Ms. Benson also argued that the transfers of rent were concealed.  Pointing to Ms. McNeilly's Schedule G (executory contracts and unexpired leases) that listed five individuals who paid rent to her.  Ms. Benson argued that the omission of Mr. McNeilly as a tenant on the Petition Date constituted concealment.  Ms. Benson also argued that making the rental payments in cash made them concealed transfers.  The Debtor countered that almost all her tenants pay in cash, and she makes the tenants pay in cash because rental payments made with checks usually bounce.  Counsel for Ms. Benson argued the Debtor did not produce evidence of these payments, despite the fact that no documents had been subpoenaed for the June 10 Hearing.  Ms. Benson's counsel also argued the oral nature of the agreement between son and mother somehow supported her concealment argument.  ECF No. 113, 00:18:15 to 00:18:25.[7]  Weighing the evidence presented, I find the payments were not concealed.

Another badge of fraud would exist if substantially all of Mr. McNeilly's assets were transferred to his mother.  Ms. Benson offered no evidence on this point.[8]

As to whether Mr. McNeilly absconded after entry of the State Court Judgment, no evidence was presented.  During the June 10 Hearing, Ms. Benson's attorney argued this element was established because Mr. McNeilly appeared during several hearings in the 2015 Case for the Debtor and "completely took over" the proceedings.  ECF No. 113,

---

[7]  Audio recordings of hearings held before the bankruptcy court are published to the docket of each case with an MP3 file as an attachment. The audio file is referenced using this format: HOURS:MINUTES:SECONDS.

[8]  The Court asked counsel whether there was any evidence of Mr. McNeilly's assets in the record, and he responded that there was not, stating, "[i]f that's not sufficient I'll move on to the next one". ECF No. 113, 00:24:54 to 00:24:59.

00:25:54 to 00:26:01. Counsel also argued that because Mr. McNeilly was absent at the June 10 Hearing, he had absconded. Nothing in the record supports such a conclusion.

Regarding whether the value of the consideration received by the Debtor was reasonably equivalent to the value of the asset transferred (the eighth badge of fraud), no evidence was presented to show that the $454.00 monthly rental payments, for the rental of a room at the Property, were not a reasonable exchange of value between the McNeillys. When asked if this factor was relevant, Ms. Benson's attorney said that it was not, because Debtor and Mr. McNeilly's finances were so "intertwined". ECF No. 113, 00:28:00 to 00:28:26. There is no evidence of a lack of reasonable equivalency because nothing was offered to establish or refute the reasonable value of the rental of the room.

Turning to the ninth badge of fraud -- whether the judgment debtor (Mr. McNeilly), was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred -- Ms. Benson provided no evidence. When asked about this factor specifically, Ms. Benson's attorney made no argument. ECF No. 113, 00:29:40 to 00:30:03.

The final badge of fraud to consider is whether the transfer occurred shortly before or shortly after a substantial debt was incurred. Because the State Court Judgment was awarded to Ms. Benson in 2013, I conclude this is at best a neutral factor.

V. CONCLUSION

I conclude that Ms. Benson established only two of the traditional badges of fraud in her quest to show the rental payments were fraudulent: (1) the transfers were to an insider; and, (2) the transfers were made after the judgment debtor (Mr. McNeilly) had been sued. Taken as a whole, the evidence fails to establish a claim that could be enforced under state law against the Debtor in this bankruptcy case. This was not enough

to establish by a preponderance of the evidence that Ms. Benson has an enforceable claim against Ms. McNeilly pursuant to state law. A separate order disallowing Proof of Claim 2-1 will enter.

Dated this 2nd day of August, 2019, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut